The next case is Delta Airlines versus Chimet or Chimet. Mr. Stroud. Good morning. Good morning, your honors. My name is Jim Stroud. I'm from Rolland Henderson. I'm here on behalf of plaintiffs in the underlying action and appellate in the case before your honors. The case involves briefly a clear... I think we know the case. Okay. And that's good. It seems to me that it is was Judge Bartle right when he said the crux of the dispute is whether there was a declaration of the cost of the platinum and whether a supplemental figure was paid. And that can only be determined by looking at the Montreal Convention and definition of some words there, prima facie and so forth. That is, his focus was on the interpretation of the contract and it was that that led him to make the forum non-convenience analysis that he did that were focused on the formation of the contract in Italy rather than the disappearance of the platinum in the United States. Am I stating it correctly? You saved me five minutes of my time. I appreciate it, your honor. If I could proceed. Yeah. Why was he wrong? Well, I think that Chief Judge Bartle abused his discretion in that in a sense he was blinded by some of the allegations that were set forth by the defendant Chimet saying we need to do all of these things in Italy and that's where the contract was was entered into by the parties. Our position is that Montreal makes it very clear that the key document under these types of air transport is the airway bill and that that is conclusive as to the responsibilities of the respective parties including the value of the cargo which is being shipped. Judge Bartle concluded that there was a supplementary document which he referred to as a cargo receipt which is in fact a term of art which is mentioned within Montreal. This was not, our position is, this was not a cargo receipt. This was a document prepared by an agent of Chimet, Vincenzo Sped. It was a document that Vincenzo Sped prepared and gave back to the shipper or the consignor as Montreal refers to it, Chimet, saying I've delivered 3.050 million euros of platinum. This was not an air cargo receipt. It was not an airway bill and I think that the terms of Montreal make it specifically clear that those are the binding terms of the contract. What Chief Judge Bartle determined was we need to take discovery as to what this document is. We need to take the depositions of witnesses. We need, pursuant to the decision of this court, we need to allow other parties to be joined in this case. The point of fact is there was a subsequent action filed by Chimet in Italy naming Delta. That litigation is pending there. They named Swissport as a defendant. Swissport was an agent of Delta in the United States. That was the location where the cargo was determined to be missing. That's a company that does business in Delaware County, Pennsylvania. Well, now, if it's ongoing there, I mean, isn't that a factor? There's litigation ongoing in Italy. Isn't that a factor that makes it more, I guess, the district court's opinion more supportable? I don't think so, Your Honor. With all due respect, it seems to me we have to go back to the decisions of this court and the decisions in the United States to say whether there should be a true preference given to a United States citizen who seeks redress within a United States court to add Delta versus Chimet. The next question that one needs to pose is whether making a Chimet or a foreign defendant litigate in the United States is oppressive and is vexatious to that defendant. We contend it is not. Everything that Chief Judge Bartle needed to do and to determine as to the relevance and the responsibilities of the parties is maintained within that air cargo receipt. Well, now, Chief Judge – I'm sorry, Chief, you go. Well, Chief Judge Sirica asked you about prima facie. I mean, listen, we can all read the provisions of the Montreal Convention. I mean, Article 11.1 makes this airway but only prima facie of the evidence of the contract. You know, so certainly reading other sections, in particular Section 4 – Article 4.2, it says alternatives can be used to figure out what the contract is. And, of course, your adversary points to the – gee, what are we calling this thing now? Article 4.2, Your Honor, refers to the cargo receipt, which is what I was alluding to earlier. Those are the only two documents that are recognized by Montreal. The airway bill, which I don't believe Chimet's going to contest, shows a higher value declared for the product or two supplementary payments for that. The second aspect is a cargo receipt, and our position is there is no cargo receipt. Pursuant to the terms of Montreal, the cargo receipt is prepared by the Delta, by the airline, and it was never done. It was prepared by Vincenzo's bed, and that's the only other document. But doesn't Article 4.2 say, as an alternative, any other means that preserves the record of carriage can be, you know, substituted for the airway bill? It does say that, but then going back to Article 11.1, when it talks about private basic evidence, it mentions only the airway bill and the cargo receipt. It doesn't mention any other evidence. I think the second aspect of this, and Judge Bartle did an excellent job evaluating the case law and supplying what he determined to be the allegations of Chimet, allegations which have never been proven and never can be proven because of the limitation on what we consider is a breach of contract where parole evidence shouldn't be provided except under very specific circumstances. Am I correct that if we adopt your view, we've pretty much decided the case? Yes, sir. I think, looking at my notes, what I would say when I get the opportunity to speak again to the court is what we are recommending is that this court reverse and remand and ask Chief Judge Bartle decide our motion for summary judgment, which has been pending for a number of months. All right. But if we think that there is, if we don't think it is clear, and if we think that the three million dollar euro or three million euro figure might be on a document that could be relevant, then it seems to me that Judge Bartle's analysis is essentially correct. In terms of foreign non-convenience. If I cannot answer your question this way, Chief Judge, I think that the answer is if we look at this, forget whether it's Montreal or Warsaw or any other convention, if we say this is a contract, it's a very specific contract that's controlled by international law, do we need to do anything other than to look at it and see if there were additions that qualified for the two things that Chief Judge Bartle indicated? One, was there a greater value declared? Clearly the answer is no. And two, was there supplementary payment paid for that? And the answer to that is clearly no. And unless you have two of those together, then I think anything else and who said what, when, why, and what they wish they had said is totally irrelevant for purposes of interpreting this contract in terms of the Montreal. Good. Any other questions? Anything else you want to tell us? I think I'm okay and I'll listen to opposing counsel. All right. We'll have you back on rebuttal. For a few moments. Thank you, Mr. Stroud. Mr. Mitzner. Good morning. May it please the Court. Everything that transpired between KeyMet and Delta happened in Italy. The documents were negotiated in Italy. They were filled out in Italy in Italian, and the platinum was transported from Italy here. As Judge Bartle said below, the fact that it was stolen in this district really has no bearing on the analysis. The key question really is, can this case be decided on one document? And under the Montreal Convention, is it required that that's the only document that can be considered? And I think on both those issues, the answer is no. First, the Montreal Convention is quite clear that the waybill and the cargo receipt are prima facie evidence. It doesn't say it's dispositive. It doesn't say once you have a clear waybill, the case is over. It says it's prima facie evidence of the terms of carriage, but still, under the Montreal Convention, you can bring in other issues. But let's take a step back. Let's look just at the waybill. The waybill argument that Delta makes is that no value was declared because there's a notation on the waybill that says NVD. That's probably a pretty fair assumption, but to actually prove that that means no value was declared, you're going to need witnesses to say that's what it means. Lower down on the waybill, it says val, val, val. Again, I can't testify to what that means, but an educated guess is that someone, speaking Italian, is going to testify that meant that the cargo was valuable. And so right off the bat, just on the face of this document, you see that it's not that clear exactly what was going on. Further complicating the analysis is that KeyMet will say they didn't fill this document out, Delta did. And so there's an argument about how was the document prepared, what was actually said to the person preparing the document. All of that is relevant information. Take another step about the cargo receipt. That is given equal weight to the waybill under the Montreal Convention, and that clearly does say 3 million euro. So you have those two issues, and you have what the witnesses will say, all of whom are undeniably in Italy. What about the argument that the cargo receipt is not really a cargo receipt? Well, even then, I mean, I think it is a cargo receipt, but even then, you're going to need witnesses to say here's how the cargo receipt was prepared. What Mr. Stroud says, it's not really a cargo receipt because it wasn't between Delta and KeyMet. It was between KeyMet and its intermediary. There's nothing in the record that says that. And as a matter of proof at a trial, KeyMet's going to say here's how the cargo receipt was prepared, or Vincenza Sped, its agent, will say that, or some other party will say that. Below, we indicated to the court that this is a shipment that went through four or five different parties' hands before it ended up in the United States. And the trial is going to be somewhat complicated as shipment trials go because each stage, they're going to say here's what I told the person when I handed it off to. And then the ultimate issue, obviously, will be what was Delta's agent told in Italy, and how were the forms filled out. But the key question is, is the waybill itself dispositive such that if there were witnesses who were going to say, well, you know, the waybill was inaccurate, or I told the guy filling out the waybill it's $3 million, does that not count at all? And under the Montreal Convention, it does count because the waybill is only prima facie evidence. And the cargo receipt, we say is a cargo receipt, but even if it's not, under the Montreal Convention, the waybill is only prima facie evidence. So a cargo receipt or some other document that indicated the declaration of value, such that Delta knew that they had basically $4 million of platinum aboard, is relevant to the consideration. And then once you're at that step, there's no doubt that the court below got this right, because they went through the analysis. There's really nothing that has this case here, other than the fact that Delta would prefer to be here. And on that issue, the judge below gave them substantial deference to their home forum. And one of the arguments that Delta makes is that the judge below did not do that appropriately. But the fact is that below, we argue that because this is not Delta's state of incorporation or their principal place of business, it should get no deference. And the court below said, no, no, no, we're going to rule against you on that and in favor of Delta. And they pretty much have deference everywhere in the United States. And so when you go through the analysis, there's no dispute that Italy is an appropriate alternative forum. On the issue about whether Delta's choice of forum was given substantial deference, it clearly was, because Judge Barlow rejected our argument to the contrary. And then when you waive the private and public factors, all of them favor Italy, because there's absolutely nothing here that would aid our forum. I'm sorry, what did you mean by when you said he rejected your argument to the contrary about the choice of forum? What was your argument? We argued below that this was not Delta's home forum, because their principal place of business is not in the Eastern District of Pennsylvania, it's in Georgia, and their state of incorporation is in Delaware. And Judge Barlow rejected that, and he said their home forum is the United States. And so the lead argument that Delta makes in their briefs is that he didn't, you know, he parroted the standard of deference to a home forum. And I'm just saying, quite the contrary, there was room, we thought, for him to say, you don't even get deference because it's not your home, and he rejected that. And he gave them the utmost consideration for their choice of forum, but then when he weighed that against everything else, he concluded that the burden on KEMET was so extreme that the case should be transferred to Italy. Who are the other parties that will figure in this litigation in Italy and the United States, and does that have a bearing? As witnesses, there are several other parties, because the transaction went from KEMET to a company called Air Express, who in turn gave it to a company called, forgive my Italian, Securipo, who in turn transferred it to a country called, a company called Vincenza, who in turn transferred it to Delta in Italy. So in terms of the facts, each one of those representatives, and maybe there's more than one, might say, well, here's what was told to me about what the cargo was, and here's what I communicated to the other person. And the most important in that chain is obviously Vincenza, Sped, and Delta, which I understand are agents of one another. And so all of those different players are going to be witnesses at a trial, on top of which in Italy there is pending litigation by KEMET against Delta and against Swissport, and then there's another litigation actually in Italy involving Lloyds, which was a carrier for this. Well, should that be something we consider? I mean, if these issues are being litigated in another forum, even a foreign forum in Italy, is that something that militates in favor of your position? Well, it certainly does, and by itself I don't think it would be dispositive, because the plaintiff does have the right to pick a forum. But in the totality, considering the fact that all the witnesses are there, and all the documents are there, and there's another case going on, and if this case went on here, you would have basically a trial by transcript, because none of the witnesses would come here, and you would have a burden on a company like KEMET that has no operations outside of Italy having to litigate on two continents, as opposed to the burden on Delta, which after all is an air carrier that has a significant presence in Italy. When you take all those things together, it seems that this was a case built for a forum on convenience. Well, are the issues in this case being touched on in the Italian litigation, to your knowledge? Oh, certainly, certainly, because the main issue is, was carriage, was value declared? Is there a limit on liability? And so that's frankly the only issue in the case against Delta and Swissport pending in Italy is, you know, who's responsible for this $4 million of platinum that turned up missing? You know, when I was reading this, I couldn't figure out how big a load $4 million of platinum would be. Is it small, or is it large? It is, I don't know if this will be helpful, but it is. This is completely irrelevant. It is like 100 kilograms, I think. I believe that's the. So it's not that large, it's quite small. 111.5 kilograms gross weight. Only if they kept teaching metric system in school, I would know the answer. That's right. I was trying to figure out how this could disappear so easily, but apparently it could. If there are no other questions. Any other questions? Thank you, Your Honor. Good, thank you. Mr. Stroud? Yes, sir. I think to answer the last question first, this was platinum powder that was used in the jewelry business. I'm not sure how you go from what I understand is a platinum metal to a platinum powder, but it's a chemical process, and it was transferred over here to a party that's no longer part of the case, Johnson Methade. If I could point out what I consider to be some of the inconsistencies. In Article 10.1 of the Montreal, I think it makes it very clear that the responsibility in seeing that the airway bill is correctly filled out is the responsibility of the consignor, which in this case is Schmidt. That's right. It says even if the carrier makes out the way bill. I'm sorry? Even if the carrier makes out the way bill, Schmidt is responsible. Article 1 says the consignor is responsible for the correctness of the particulars and the statements relating to the cargo inserted by it or on behalf of the airway bill or furnished by it or on its behalf by the carrier for insertion. Article 10.2 then indicates that it requires the consignor to indemnify the consignor, Schmidt, to indemnify the carrier, Delta, against damage suffered by it or by another to whom the carrier is liable that results from irregularity, incorrectness, or incompleteness of information provided by the consignor or on its behalf. Our position is that's Vincenzo's bet, which is the agent of Schmidt. It's not an agent of Delta. So I think it's clear on that that to the extent that Schmidt is arguing that the airway bill was inconsistent with what they wanted it to have said, that's their problem. It's not Delta. Delta takes it and has to be credited with the manner in which the airway bill is filled out. There were some questions, I think, Your Honor, that you posed about the litigation in Italy. I think it is accurate, although perhaps not in some of the papers that were in the brief. That litigation was filed after we initiated our case. It was stayed and has presently stayed pending what's going to happen by this court on our appeal. So that case- Pardon me. What impact would this determination have on the Italian court if there's a determination here? Again, I'm not sure I can answer that directly, Judge, but I think that it's my understanding based on Italian counsel's communications through my client that that litigation by Schmidt against Delta Airlines, Swissport, which was the entity in Delaware County that was to have safeguarded the platinum, and Lloyds of London that has a separate claim by Schmidt against Lloyds is being stayed pending what's going to be done by the Third Circuit in this appeal. So you're saying that that shouldn't even be a factor at all because nothing's happened in that particular lawsuit? Nothing's happened. It's not as if we say, well, why should we start afresh in the Eastern District when they've already done all of these things? Well, that's right. No depositions, nothing other than initiation of it and adding Lloyds insurers to the case. The final thing that I would like to say- No, you may. You may go ahead. The final thing that was mentioned in our brief is the International Air Transportation Association tariffs that are applicable to this, again, as being part of the law in conjunction with Montreal that sets forth requirements when filing things by air cargo or by sending things by air cargo. It particularly sets forth tariffs that must apply, and it indicates in that that specific amounts of money must be paid in order to allow shipment in excess of $100,000 in the United States dollars. This was clearly in excess of that. There's no indication on the airway bill. There has been no evidence forthcoming in any of the briefs that Schmidt paid anything more than the standard transportation cost for something that was of no declared value. Thank you, Your Honor. Mr. Stroud, thank you. The case was very well briefed and very well argued. We will take the matter under advisement.